Good morning, Your Honors. My name is Thomas Biskup on behalf of Damon Humphries, the petitioner, who is also guardian and conservator for Angela Humphries, and I would like to reserve two minutes for rebuttal. What I hope to address in my argument today is the clear error by the district court in this case, as well as the reasons for why mandamus is appropriate. And I think that this court can decide this case on very narrow grounds. Two issues that I think the district court primarily committed clear error on. One is all states' own language of consent from the 1958 power of attorney and the board resolution that reconfirmed that in 1996 that were part of the requirements for all states to become licensed to write insurance, and it's currently at half a billion dollars per year in property and homeowner's insurance in the state of Arizona. And the second basis is the district court not only did not mention, or not only did not enforce Arizona law, that says the insurance code is different, and we interpret the requirements under the insurance code, and this is the Borea case, of course, that consent, that this type of appointment of the insurance commissioner is expressed consent. And I think ‑‑ Didn't ‑‑ we said in King that merely having that sort of statute is not enough. There has to be a state law rule that that constitutes consent, whereas Borea seemed to be based solely as a per se rule, this sort of statute constitutes consent. Well, I think in King this court looked to the state law, and the state law did not have the same decisional authority that found consent. In fact, in that case the state said no, registration is not consent as a matter of state law, and in King this court enforced that. So Borea says this is just a per se rule relying on Pennsylvania fire, and we said in King that's not enough. There has to be an interpretation by state law that it constitutes consent. So are you saying Borea interpreted state law as constituting consent or just as a per se rule? No, absolutely. It interpreted the statute, and it focused on the portion of the Arizona insurance code that says in order, as a foreign insurer, in order to write business, you must give a part of attorney to the insurance commissioner of the state of Arizona. But it did say, and we interpret that to be consent to personal jurisdiction for all purposes. Yes, it did. It said this is express consent, and it also looked at the specific power of attorney in that case by the insurance company in that case, which is very not quite word for word but pretty close to what all states' power of attorney is in this case. And I think the, and so in fact in the Walmart case that came afterwards, the Arizona Court of Appeals said, interpreted the business registration statute the opposite way, the way that all states argues. And so how do we interpret how the state Supreme Court would come out where Borea was relying on Pennsylvania fire. Walmart interpreted it exactly opposite, the same language. How do we determine how the state Supreme Court would come out? Well, let me answer. Because we have to find a clear error, and we have these two cases before us. That's right, and in fact the answer is in Walmart. What they were interpreting different statutes. And in Walmart, the Court of Appeals recognized Borea and said, we're talking about implied consent under the business registration statute. Borea interpreted the insurance code, a different statutory section, and the Walmart court explicitly said Borea found expressed consent, and that was the distinction. And so is there a material distinction between those two statutes, or was Walmart just distinguishing Borea so it could do what it wanted? No, I think there's a fundamental difference between not just the language of the statutes but the whole scheme, and I think it brings into issues that we set forth in the briefing, but it brings in issues of federalism in this case. You're talking about in Walmart you had a slip and fall in Oregon. Nobody had any connection to Arizona, and yet the case was filed here. In the case of an insurance company, the insurance code provision says you have to have the insurance commissioner have this power of attorney as long as you have liabilities and assets, I think liabilities in the state. And that was one of the issues in Borea. The insurance company had stopped writing, and they were arguing, well, you have no power over us anymore. Under McCarran-Ferguson, the power to regulate the insurance companies is solely with the 50 states. Federal government has to, Congress has determined hands-off approach under McCarran-Ferguson. We're going to leave it to the state regulation. And so I think the fundamental distinction, if you end up not registering under the Arizona statute, the business registration statute, you have one penalty. You can't bring a lawsuit in the state courts. The difference with the insurance regulations where all states conduct in this case or in this state is solely regulated by the insurance commissioner. There are all sorts of financial implications, requirements that have to be met to be licensed, and the penalty for not having the power of attorney that lasts, and it's irrevocable, and it lasts as long as there are liabilities in this state. The penalty for that is that all states can't write business. They can't do business. They are illegally, they would be illegally writing insurance business. And that's, especially when you're talking about a half a billion dollars, that's a huge issue. It's not merely somebody opening a business, not registering, with no regulation, frankly. So I think that the distinction between those two statutes and the way the Walmart and Borey courts have decided is very real. And, in fact, we talk about Pennsylvania Fire, but Pennsylvania Fire was an insurance case. And in that case, Missouri made a very similar decision that insurance companies are different. Now, obviously, Pennsylvania Fire then got extended to general business registration statutes, but the narrow distinction here is very important. This isn't your, you know, this isn't a mom-and-pop store opening on the corner and not bothering to spend, you know, their $100 of a single piece of paper every year saying who their board of directors is or their officers. It's not what we're dealing with. We're dealing with a community. Well, neither was Walmart. I'm sorry? Neither was Walmart. That's true. And yet you're putting Walmart on the other side under the general corporate registration requirement. And what reason do you think, I mean, I guess you've offered the reason, but for us the question is would the Arizona Supreme Court split the uprights in the same way that you've argued? The Walmart decision made a point of saying we don't have to go to O'Rear or however that's pronounced. And, indeed, the author of O'Rear joins the decision in Walmart. They tee it up in Walmart by saying, look, the main argument is that Pennsylvania Fire is now, is out there but has been arguably superseded by Goodyear and Daimler and the court of appeals says we don't have to consider that. We're just going to decide the Walmart situation and decides it in a different way. Well, so what tells us the Arizona Supreme Court would decide to treat those two situations differently? Well, first of all, I disagree with the fundamental premise that Pennsylvania Fire is gone. Pennsylvania Fire had to do with. I'm not trying to offer that as a hypothesis, but that was the argument that Walmart recognized and then said we don't have to decide that. And, again, I think the indication would be, well, first of all, whether if we're going to now look at the tea leaves and say what the Arizona Supreme Court, it's been four years, been around 12 years now, Walmart a few years. Supreme Court of Arizona didn't touch those cases. And if you actually look at, I think if we're going to read those tea leaves, you look at what the Supreme Court of Arizona has done over the years with respect to insurance companies and how they treat insurance companies and recognizing the regulation, recognizing, I mean, Arizona is one of the best bad faith states in the country. And I think there's a fundamental public policy. Is that why we're here? I mean, I've got to ask the question of Von Runderbach. I mean, you're from Michigan, and there's no question that that defendant is ably represented in Arizona. So my head's starting to explode trying to figure out why you from Michigan are desperate to be in Arizona and why Arizona is busy arguing that ought to be in Michigan. Is there a difference in the law that justifies why we're fighting about this? There is. And the reason we're here fundamentally is our client's been here for nine years now. Was Arizona law more favorable for your client than Michigan law? Yes, and we have repeatedly, in fact, we've gone up against Steptoe multiple times, including a case that we had before Judge King in Honolulu that had to deal with an injured party who had never been to Michigan. Could you remind me of the element of damages that's available in Arizona but not in Michigan? All the tort damages under bad faith. Okay. So the bad faith in Michigan does not allow a bad faith cause of action. And we have been successful in every case we've been in, in Hawaii, in Arizona, in Nevada, where the protection of the residents is an important factor. And I know that's not directly what we're dealing with here, but that is the issue. And I bring that up because it's amazing to me that Allstate wanted to go to the Eastern District of Michigan rather than in their home state of Illinois, which is what we suggested, because we still have a case here against Corvell for aiding and abetting the bad faith. And Corvell never raised a personal jurisdiction argument. And, frankly, with their contract, if we had argued this in the district court, we could have all been happy in Illinois. But I think because of that fundamental difference, Allstate didn't want to do it. And I would point out, too, that what's interesting about that is Allstate comes here and seemingly wants to disavow its plain language of its consent. It says, service on the insurance commissioner is as if we're physically present here in the state. And I don't think anybody can really argue that physical presence in the state is gone. I mean, the idea of Pennoyer and what was gone from that was Pennoyer said only physical presence. And so, but Allstate here said, oh, we're going to consent to the Eastern District of Michigan. And yet they want to disavow what's required for them to write business in the state. And there's a fundamental public policy why. Well, there would be an interesting question, and decisions, including our decision in King, have noted. If the state wrote the statute making it crystal clear, if you want to write insurance here, you have to consent to jurisdiction over claims from elsewhere, and the Second Circuit case, Brown, talks about that, too. Okay, that may be a tough question, but none of these statutes say that. The consent here doesn't say that, and so we're grasping at straws. Well, I will say the consent here says it talks about more than just an agent for service of process being appointed. It says we irrevocably appoint the insurance commissioner. Service upon the insurance commissioner is as if we are physically present. Mind you, that was written in 1958. Is your argument more that once Boerier is decided, then continuing to do business is consent, because then you do have notice, even if it wasn't clear before? If I'm understanding the question right, yes. The consent was, and I think there's two independent bases, the consent itself, but then the language of Boerier, or the decision in Boerier reinforces that. Because it seems like maybe, I guess I'm not so persuaded that the language itself is so clear, but Boerier makes it clear that the state is treating it as consent, I think. That's right. And then they keep doing business. That's right. And I think the intent, if you look at, I agree, does it say the magic words personal jurisdiction? No. But it gives the effect of what is, for over 100 years, has been personal jurisdiction. That is presence in the state. And the consent itself also says we're going to follow all the laws of Arizona. So once we have Boerier, but we also have Walmart, so maybe you can get consent from Boerier, but then after Walmart, isn't there at least enough confusion that this isn't clear for purposes of mandamus? I don't agree because Boerier was expressly preserved in Walmart, and they're dealing with two different statutes. And as I've explained, there's a fundamental difference between an insurance commissioner and, frankly, Walmart. And I think with Walmart and Brown and all of those cases, there was no connection to the state. And Daimler, the same thing. But the connection here is you have a resident of this state for nine years who has been harmed by the conduct of Allstate. And so I think that is a fundamental distinction, along with the regulation of the insurance company. I think they're completely in sync. So the policy wasn't purchased here, though. Could the insurer have canceled the policy when she moved to Arizona? No, because this is a lifetime benefit. So then how is that consent? I mean, maybe there's consent in other cases because they kept doing business here. But in her case, it is like there's nothing in this state. Because it's expressed. Well, no, because the conduct was directed at her that forms the bad faith claim. This is, you know, many years post-accident that they decided to mess with her benefits. And I will say this. You're not making up a specific jurisdiction argument. Well, I'm just responding to the question. But it strikes me as significant that if there's no specific jurisdiction argument being made, you don't use the same factors through the back door. You're not claiming that Allstate's misconduct took place in Arizona. Well, we preserve that, but it's not before the court on the petition because of the clear error. And I think to get to your point, Judge Clifton, that is one of the reasons we haven't raised the specific jurisdiction issue because I think it's because of the clear error of not following the Arizona law. But you would have raised specific jurisdiction in the district court. We did, and we preserved that. How do you preserve that? Matt, I don't understand that. I mean, you're saying at the end of the case you'll just bring a regular appeal? Well, I mean, I guess that's a possibility. But my point is that I don't think, I think the decision to me was very, that the clear error was on the general jurisdiction. And the general jurisdiction, the fact that something else, you know, from elsewhere, that's the whole point of the express consent of the general jurisdictions, that they're subject to the claims wherever they may be. And, in fact, just a quick example. I see my time's about up. You're over time. Oh, I am. I'm sorry. Well, the quick example was, to answer your question, the case we had in Hawaii, the Michigan, the person had never been to Michigan. They were a passenger in a car with an accident here. They were covered for these first-party lifetime benefits. They had no connection to Michigan. So under the theory, this person who's never been there, who requires 24-hour care, would have to litigate in Michigan, and that's not, well, anyway, I'll leave that at that. But I think mandamus is appropriate. Thank you. May it please the Court, Doug Janicek on behalf of Allstate Insurance Company. I want to focus on three points this morning. First, with respect to state law, this Court is not bound by Beau Rear. As the Court has said, the question is whether the Arizona Supreme Court would construe a statute requiring appointment of an agent for service of process as consent to general jurisdiction where the statute's text includes neither the word consent nor jurisdiction. Is there a reason we shouldn't look at what a state appellate court has held, as we normally do when we're sitting in diversity and trying to figure out what the state Supreme Court would hold? Yes, Your Honor. There's actually three reasons not to look at that decision. As I've said, again, we're predicting what the Supreme Court would do. And the court of appeals decisions are data points. And speaking of data points, post-Daimler, after Beau Rear, the court of appeals, the same court that decided Beau Rear looked at a statute just like 20-211 that had neither the word consent in it or the word jurisdiction and said compliance with this statute is not consent to general jurisdiction. And here's what the court said in Walmart. A corporation cannot fairly be deemed to have consented to waive its due process rights when, as here, the statute gives no notice that such a waiver is the price of registration. So Walmart distinguished, though, as opposing counsels, as expressly distinguished Beau Rear and the insurance statute. I think what it did was say we don't have to deal with that to decide this issue. But it did completely. Well, at least left it in place. But it completely destroyed the underlying construct of the case, which is a statute that doesn't put you on notice at all that your consenting to general jurisdiction somehow does that. And, again, post-Daimler, that theory simply would violate the due process clause. Well, I thought Daimler in that line of cases was looking at the presence issue. So you're present in the state if you're incorporated there, it's your principal place of business, or you have so many contacts that you're essentially at home, whereas the Pennsylvania Fire line of cases was talking about consent. That's the argument opposing counsel made, and that seems to be what the Supreme Court has said. So how would Daimler affect Pennsylvania Fire? Well, Daimler specifically said in footnote 18 that pre-international SHU decisions, which includes Pennsylvania Fire, were, quote, decided in the era dominated by Penoyer's territorial thinking and should not attract heavy reliance today. But you're not arguing that you can't consent, that a corporation couldn't consent to jurisdiction, are you? I mean, that certainly is possible. You don't have to be present. You could go into court and consent to jurisdiction. It's absolutely possible. A foreign selection clause in a contract is one way that a corporation would consent to personal jurisdiction. Your co-defendant appears to have consented, did not object to jurisdiction in Arizona, even though, as I understand it, it's not either incorporated or has its principal place of business here. And there's no question about the authority of the Arizona court over your co-defendant. So why shouldn't we infer consent? Well, that is the problem with the way the statute is written post-Daimler. But Daimler doesn't say anything about consent. But the construct of Daimler was that you are at home in two places. Right, but if you've consented, it doesn't matter whether you're at home. So the argument here is that you consented. And so we said in King that we will infer consent if there is this registration statute and the state law says that constitutes consent. So it doesn't matter whether you're present or at home or incorporated or whatever because you've consented. That's how I understand King. And I didn't see Daimler as affecting that. Right. Well, first, on the state law issue, it's what would the Arizona Supreme Court do. And I think, as I said, in light of Lamar, it would not follow Brewer. But if you even pass the state law issue, as King said, any state rule of consent is subject to federal constitutional restraints. And that's what Brown in the Second Circuit case, they specifically disregarded a Connecticut Court of Appeals decision that said compliance with the statute was consent to general jurisdiction. And what Brown in the Second Circuit said was after Daimler, Pennsylvania Fire simply cannot be the basis for consent. Well, our decision in King recognizes Pennsylvania Fire. I'm not sure that we have the liberty to go down the road you're suggesting. Can we? I mean, if we've got a presidential opinion that says Pennsylvania Fire is not a dead letter, how can we treat it as a dead letter? Well, King was pre-Daimler. But Daimler says nothing about consent. We're going around in circles, it seems like. But what Daimler said was you are at home in essentially two places. And what the key point was that a corporation that does business in many places cannot be deemed at home in all of them. Well, that's fine. But the question is whether they could consent to jurisdiction in all of them. And I don't see any constitutional barrier to them consenting. But every state has a registration statute. And if it's like they do. Right. And we said it has to be not just a registration statute. It's a registration statute plus the state law says that constitutes consent. Right. And, again, I think here state law is that Arizona Supreme Court would not fall over the rear. But once Boerier is decided. So you're an insurance company and you know after Boerier that at least an Arizona appellate court has said that by doing business and keeping your registration you are consenting and you continue to do business after Boerier. Why isn't that consent? Well, two points on that. Number one, again, the Walmart decision completely destroyed the very construct of Boerier. Except that the Walmart decision carved out insurance. So now you're still an insurance company and you're here and you're doing business after Boerier and Walmart. And it still carved out insurance. So how is that not consent? But, again, the policy here was sold in Michigan. It has no connection with Arizona. So there would be no notice. Right. But if your client had canceled all business and said, okay, we don't after Boerier or at least after Walmart saving Boerier, we don't want to do business in Arizona anymore because Arizona law is bad. It has bad faith claims. We don't want to do this. Then you'd have a very different case about whether this person still could use general jurisdiction and consent, I guess, because you wouldn't have been doing business in Arizona anymore. But you are doing business in Arizona, I think. If you had rescinded your registration, presumably we would then say there's no basis here for consent. But after Boerier, the insurance company did not rescind its registration and was on notice that that constituted consent at least per Boerier. But that consent is subject to federal constitutional restraints. That's exactly what King says. No. Consent. You've acknowledged that you can consent separate and apart from the limitations of those constraints. So I'm not sure your argument that consent is subject to those restraints has any traction. What you're arguing is that the statute should be interpreted in light of the subsequent Supreme Court decisions. And so you're arguing the Arizona Supreme Court today would answer the question of how to interpret the Arizona statute differently. I don't think that's the same as what you've been asserting, where we have to read that this court should read the Arizona statute that way because what we've said in King is that it all turns on what the state has decided its statute means. You're correct, Your Honor. We are absolutely arguing that the state Supreme Court would follow Wal-Mart v. La Mer and not Boerier. But on the constitutional issue, Your Honor, this is identical to the Second Circuit case in Brown. In that case, you had a statute that did not say consent and did not say jurisdiction. In 2009, the Connecticut Court of Appeals said that's consent to general jurisdiction. And the Second Circuit said not anymore, not after Daimler. But did they have a case like King? Did they have any precedents saying that would constitute consent that they overruled in light of Daimler? Well, they looked at they said the Pennsylvania statute, which actually says if you register to do business here, you are consenting to personal general jurisdiction. And they distinguished that case and said that's different. But we have binding circuit precedents. So in order for us to say that's no longer good law, we're going to follow Brown, we would have to say that the Supreme Court decisions were clearly irreconcilable with King. And as Judge Friedland pointed out, since there's nothing in Daimler about Pennsylvania fire or consent, it's pretty hard to say it's clearly irreconcilable. Well, in King, this comes right from King, and this is at the head note 5. It says Federal courts look to State law for the effect of compliance with State appointment for service statutes, quote, subject to Federal constitutional restraints. So King, the rule in this circuit clearly is we'll look to State law subject to Federal constitutional restraints. Pre-Daimler, that was a whole different world in terms of what those restraints were. Post-Daimler, and that's exactly what the Second and the Eleventh Circuits have done. I also cited we cited in our briefs the All Acquisition Corporation case from the Eleventh Circuit, decided just in August of 2018. Again, following Brown, what they said was our conclusion as the Florida law. And in Brown, I'm sorry, in All Acquisition Corporation, there was a dispute as to what did State law mean. And here's what the Eleventh Circuit said. Our conclusion is the Florida law is reinforced by our concerns that an overly broad interpretation of Florida's registration scheme as providing consent might be inconsistent with Daimler, which cautioned against, excuse me, exorbitant exercises of general jurisdiction. And so again, this court would be third in line. Second and Eleventh Circuit have already looked at the world differently now after Daimler and have disregarded the territorial thinking, the pre-International Shoe territorial thinking of Pennsylvania Fire. And again, I wanted to bring up again the Pennsylvania cases cited by Petitioner, clearly distinguishable. If you had a statute like Pennsylvania's that said you are consenting to general jurisdiction by doing business here, by registering, that is a different case. That's not our case here. This statute is like the Florida case in All Acquisition Corporation, which is Eleventh Circuit, and this statute is like the Connecticut statute, which is Brown case from the Second Circuit. I want to finish with just one quick point on Petitioner's argument that this is kind of an all or nothing proposition. And the court has touched upon this a little bit with respect to specific jurisdiction. Use of general jurisdiction is a relatively rare occurrence. Most lawsuits are here in Arizona because the claims arise out of contacts with Arizona. Specific jurisdiction is still available in Arizona for policies that Allstate sells or services in Arizona. That is still an available basis of jurisdiction. But Petitioner here does not assert specific jurisdiction. This is a dispute arising out of a Michigan policy sold to Michigan residents and a vehicle accident occurring in Michigan and adjusted in Michigan where the petitioner lived for 30 years after the accident. Let me be clear about this. You say the petition, the current petition from Mandamus does not assert that ground. Was that ground asserted before the district court? It was, Your Honor. And how does that stand now? It's potentially an issue to be raised later on appeal but not part of the current petition. It is definitely not part of the current appeal. It perhaps could be raised after final judgment is entered. But it is not part of what's before the court today. And as the court pointed out, Petitioner's own lawyers are from Michigan. And, again, as the district court. And your client's well represented in Arizona. That is true, Your Honor. But, again.  Well, it was Petitioner that sought the transfer. But not to Michigan. No, but to Illinois, which is right next to Michigan. So what's the hardship? Technically, there's a lake between them. That is true, Your Honor. I was raised on that lake, so I know about that part. But, in reality, there are bigger things in the background. I sort of inferred what they were. I got confirmation from plaintiff's counsel. I suspect you're acknowledging that it's not simply a matter of the weather here being better than it is in Detroit. Agreed, Your Honor. But this is about the power of the courts. This is not a substantive law issue. I keep hearing plaintiffs talk about, well, that was the insurance statute in Beaureair. But when it comes to the power of a court to hear a dispute, there is nothing, a power to hear a dispute, all-purpose jurisdiction. Let me pose a question to you this way, and I'll take you slightly over time. Our decision in King, and I think it's talked about as well in Brown, suggests, you know, the statute could be written the way that Pennsylvania's statute apparently is, which is to be crystal clear. You want to do business here, you're consenting to being sued about things that happen someplace else that otherwise you may not be susceptible to service. And you sign on the dotted line, that's the end of it. Would you still make the same argument that a state can't do that, that a state doing that would violate the federal constitutional limitations? That's an excellent question, Your Honor. And it is definitely one that has been raised post-Daimler. The Third Circuit has not revisited its decision in Bain, so there is no circuit decision on that. Again, you don't have to deal with that issue for this case, but I'm trying to focus on where it is we should be really paying attention. Well, I think, as the Second Circuit pointed out, it's, you know, the question of notice. You know, is there something in the statute that would tell the corporation that yes? We would go back to the time when all state signs the consent and its board ratifies it or so forth, but doesn't, in effect, year after year, continuing to do business and continuing to file registration papers, make it not simply a matter of what was done in 1958 or whatever, but maybe 2018? Well, before Daimler, there would be no reason to even rely on that because – But by 2018, if all state had to refile papers with the insurance commissioner to confirm that it's still operating here, I would submit that typically, again, as I had mentioned, specific jurisdiction is overwhelmingly the basis for jurisdiction for the cases here. So I'm not sure the issue would have arisen until this case where they abandon specific jurisdiction and go solely for the consent theory. So, again, we believe that the petition should be denied. Thank you. Thank you. I think you have some time for rebuttal. Thank you, Your Honors. I will keep it very brief. I just want to touch on this one idea about, I know it's not direct, but this last part of the argument on specific jurisdiction being in the state of Arizona. Actually, the argument that all state made was that specific jurisdiction, they made this blow, was that it only applies where the adjusters are. So if you have an Arizona policy under that argument, but the adjustment takes place in Texas, guess where you have to sue according to the argument they made. But I think the – You're not conceding the accuracy of that argument. I'm sorry? You're not conceding that that argument is a proper statement of the law. No, but I think – And we don't have to accede to it either. That's right. But I think it points out this – And the fundamental change in the insurance industry right now is that everything is being consolidated. State Farm has a big place down by the Arizona state there where there are adjusters who handle claims all over the country. And so it makes for an interesting argument as to where this would go without the general jurisdiction. But I want to end on this point that I think the fundamental difference between the Brown case and the 11th Circuit case and here is the insurance industry is different. The insurance industry, this is not, as I said, not simply a case of Walmart paying a quick fee. The federal government has determined, Congress has determined, that we leave the regulation up to the states in McCarran-Ferguson. And so there's a comprehensive scheme. And so the insurance industry has to go state by state if they want to write. And I think that that interpretation and the language that's in there, which is different than the general business statute, does make a fundamental difference. And we talk about fairness. There's nothing unfair about all states having to come and open up their books and provide all sorts of financial assurances and having them subject to general jurisdiction in the state. Thank you. Thank you. The case of Humphreys v. District Court, Allstate Insurance Company, is submitted. And we are adjourned for this session. Thank you.
judges: Clifton, Ikuta, Friedland